PHILLIP A. TALBERT
Acting United States Attorney
MICHAEL D. ANDERSON
SHELLEY D. WEGER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>        v.<br><br>JOSEPH JOHN DEASER, IV,<br><br>                  Defendant. | CASE NO.  2:19-CR-00082 TLN<br><br>UNITED STATES' REPLY TO DEFENDANT'S SENTENCING MEMORANDUM<br><br>DATE: August 5, 2021<br>TIME: 9:30 a.m.<br>COURT: Hon. Troy L. Nunley |

The United States submits this reply to defendant's sentencing memorandum, ECF 49, to correct and clarify statements made by the defendant and to provide the Court with information from the United States Bureau of Prisons (BOP) about its ability to provide appropriate medical care for Deaser.

<u>Response to Deaser's Characterization of the Offense</u>

In his sentencing memorandum, Deaser mischaracterizes parts of his offense.

First, the evidence shows that contrary to Deaser's assertion, not all the peace officers whose identities were used to conduct illegal firearm transactions were members of Deaser's club. *See* ECF 49 at 3.  Notably, Count 3 of the Information, to which Deaser pled guilty, concerns the straw purchase of a firearm using the identity of a peace officer who was not a member of Deaser's gun club, and who stated he had no affiliation with Deaser or the gun club. *See* ECF 48 at 3 (Govt.'s Sent. Memo), Ex. A (memorandum of interview).[1]

---

[1]  The name and identifying information of the victim peace officer and third parties have been

Next, this case is about non-roster firearms not high capacity magazines.  In both his sentencing memorandum and the PSR, Deaser appears to be confusing or conflating the firearm roster and high capacity magazines.  ECF 49 at 2; PSR at 8.  As an initial matter, the ban on high capacity magazines and the criteria for determining whether a firearm was "safe" such that it could be placed on the roster are separate requirements.  *Compare* CA PC § 31910 ("Unsafe handgun" defined)[2] *with* § 32310 (prohibition on large capacity magazines), *see also* ECF 49 at 2.  Although Deaser may have also been selling firearms with high capacity magazines given his attention to this issue, the government's case focused on non-roster firearms, not whether a firearm could hold a high capacity magazine.  Thus, it is unclear why Deaser continues to focus on firearms with high capacity magazines.  *See* ECF 49 at 2.  In his sentencing memorandum Deaser calls the "2001 [firearm roster] law . . . controversial."  While the constitutionality of California's ban on high capacity magazines is now controversial based on recent court decisions,[3] Deaser fails to explain why the firearm roster law is controversial other than the fact that he does not agree with the law.  *See* ECF 49 at 2.  However, as an FFL, Deaser was obligated to the follow the law whether he liked it or not.

Significantly though, this case is not just about violating gun laws, but about the way Deaser violated the law, by unlawfully using peace officers' identities.  In its sentencing memo, the government explained that Deaser's crime was made more egregious by the fact that publicly Deaser held himself out as someone who could be trusted, while privately he took advantage of that trust.  *See* ECF 48 at 2.  The character letters Deaser submitted with his sentencing memo further prove the government's point.[4]  *See* ECF 49, Ex. C.  Deaser was (and apparently still is) respected and deeply trusted by some.  For

---

redacted from the report.

[2]  To be deemed "safe" and eligible to be placed on the roster, a firearm had to meet various requirements unrelated to how many bullets the magazine held:  (1) the firearm was required to have a particular safety device; (2) it had to satisfy firing requirements that placed limits on the number of times the firearm malfunctioned due to ammunition that failed to detonate, *see* CA PC § 31905; and (3) it had to pass six different drop tests by not firing the primer when dropped from the condition it would have been in if the firearm were dropped from a hand (cocked with no manual safety applied), *see* CA PC § 31900.

[3]  *See Duncan v. Becerra* (9th Cir. Cal. Aug. 14, 2020), 970 F.3d 1133, 2020, vacated, (9th Cir. Cal. Feb. 25, 2021), 988 F.3d 1209

[4]  Notably, two of the individuals who wrote letters on Deaser's behalf were sold non-roster handguns.  While they themselves did not do anything unlawful, they benefited from Deaser's offense.

example, Ms. Maestrini states that even now, she would "trust him with anything."  ECF 49 at p. 67.

Significantly, Deaser had also won the trust of at least one of his victims, who was extremely cautious

about who he/she would trust.  ECF 33.  Deaser has seemingly made positive contributions to society

and to some of those around him.  However, it does not negate the fact that he victimized others, and for

that there must be accountability and just punishment.

BOP is Capable of Caring for Deaser's Medical Conditions

The defendant requests a shorter term of imprisonment due to various medical conditions.  ECF

No. 49 at 3-4, 50.  To address this argument, undersigned counsel reached out to BOP and requested a

general assessment of its ability to care for the types of medical conditions identified in Deaser's

medical records.  Although BOP was not provided with medical records, Dr. James Pelton, a board-

certified internist, and BOP's Regional Medical Director, wrote a letter explaining BOP's medical

resources.  In his letter, Dr. Pelton opined that based on a general understanding of Deaser's medical

conditions and his medical expertise, BOP can provide appropriate medical care.  *See* Ex. B.  In fact,

according to Dr. Pelton, BOP "has many inmates with the same or substantially similar medical

conditions that are designated and appropriately cared for throughout the Bureau's facilities.  Ex. B at 3.

For the reasons above as well as the reasons in the government's sentencing memo and the

Presentence Investigation Report, the government requests the Court sentence Deaser to a term of

imprisonment at the low end of the applicable guideline range on Count 10 to be imposed consecutively

to the mandatory two-year minimum term on Count 3.

Dated:  August 2, 2021

PHILLIP A. TALBERT
Acting United States Attorney


By:   /s/ SHELLEY D. WEGER
SHELLEY D. WEGER
Assistant United States Attorney